OPINION
On September 10, 1997, the Knox County Grand Jury indicted appellant, Samuel Musgrave, on one count of murder in violation of R.C. 2903.02 (A) and one count of involuntary manslaughter in violation of R.C. 2903.04 (A). Said charges arose from the beating and drowning death of one Robert Welker. Appellant was one of a group of individuals involved in the incident. The beating occurred during a party at appellant's house. After the beating, Mr. Welker's body was dumped in a gravel pit.
A jury trial commenced on February 24, 1998. At the conclusion of the state's case-in-chief, appellant made a motion for acquittal pursuant to Crim.R. 29. The trial court denied said motion. The jury found appellant guilty of murder. By judgment entry filed March 2, 1998, the trial court sentenced appellant to fifteen years to life. On March 13, 1998, appellant filed a motion for new trial and a motion for acquittal. By judgment entry filed March 26, 1998, the trial court denied both motions.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY.
 II DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF CUMULATIVE ERRORS COMMITTED DURING THE COURSE OF THE TRIAL WHETHER OBJECTED TO OR NOT.
 III DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED MISLEADING AND PREJUDICIAL EVIDENCE CONCERNING TESTS PERFORMED BY CAPT. DENNIS FOSTER.
 IV DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO GIVE AN INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF ABANDONMENT.
 V DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL DID NOT REQUEST AN INSTRUCTION ON ABANDONMENT.
 VI DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL THROUGH OTHER ERRORS AND OMISSIONS BY COUNSEL.
 VII DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE JUDGE ENTERED THE JURY ROOM, COMMENTED ON THE LENGTH OF THE TRIAL SO AS TO COERCE THE JURY TO REACH A FAST VERDICT.
 VIII DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT FULLY DEFINE THE CONCEPT AND ELEMENTS OF AIDING AND ABETTING.
 IX DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE JURY WAS PRECLUDED FROM CONSIDERING THE LESSER INCLUDED OFFENSE OF FELONIOUS ASSAULT WITHOUT FINDING DEFENDANT NOT GUILTY.
 X DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE INDICTMENT WAS AMENDED.
 XI DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT REQUIRE JUROR UNANIMITY TO CONVICT.
 XII DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTIONS FOR JUDGMENT OF ACQUITTAL WERE OVERRULED.
 XIII DEFENDANT WAS DENIED DUE PROCESS OF LAW WHERE THERE IS NO EVIDENCE THAT DEFENDANT PURPOSELY CAUSED THE DEATH OF ROBERT WELKER OR THAT HE HAD A SPECIFIC INTENT TO CAUSE WELKERS DEATH.
 I
Appellant claims he was denied the right to a fair and impartial jury. We disagree.
Appellant challenges the impartiality of seven jurors. Appellant argues these jurors "had exposure to the case or were familiar with the case in one form or another." Appellant's Brief at 4.
In Irvin v. Dowd (1961), 366 U.S. 717, 722-723, the United States Supreme Court held the following:
 It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
In State v. White (1998), 82 Ohio St.3d 16, 21, quoting State v.Maurer (1984), 15 Ohio St.3d 239, 252, the Supreme Court of Ohio stated "if `the record on voir dire establishes that prospective veniremen have been exposed to pretrial publicity but affirmed they would judge the defendant solely on the law and the evidence presented at trial, it is not error to empanel such veniremen'"
A review of the voir dire establishes each of these seven jurors agreed to set aside their preconceived notions about the case and base their respective decision on the facts and law as presented. T. at 22, 45-46, 48-49, 59-60, 74, 88-89, 106-107. We note appellant did not make any challenges for cause. T. at 80, 92, 102, 107, 113. Upon review, we find appellant was not denied the right to a fair and impartial jury.
Assignment of Error I is denied.
 II
Appellant claims he was denied a fair trial due to cumulative errors. We disagree.
Appellant argues he was prejudiced by a considerable amount of hearsay testimony, improper testimony referring to gangs and improper remarks by the prosecutor. At the outset, we note most of the complained of testimony and remarks were not objected to. An error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long (1978), 53 Ohio St.2d 91; Crim.R. 52 (B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 HEARSAY TESTIMONY
Appellant argues Captain Foster was permitted to give hearsay testimony and references this court to questions asked by appellant's own counsel during Captain Foster's cross-examination. T. at 307, 309, 310. In fact, the state objected to this line of questioning but the trial court overruled the objection. T. at 308-309. On redirect, Captain Foster explained how during the course of his investigation he found no other relevant evidence at the gravel pit (T. at 318), and how he determined the individuals present at the party during the incident. T. at 322-323. The redirect did not elicit hearsay, but the results of Captain Foster's investigation, including other individuals yet to be charged. T. at 326-329. The names of the individuals at the party during Mr. Welker's beating were freely given during appellant's own direct testimony. T. at 795.
Upon review, we find any hearsay was in fact initiated by appellant's own counsel. T. at 339. It is well accepted law a party is not permitted to complain of an error which said party invited or induced the trial court to make. State v. Kollar (1915), 93 Ohio St. 89.
Appellant also argues the trial court improperly admitted the hearsay testimony of Helen Moore, a friend of Shanna Higgins. Ms. Higgins was an individual at the party who observed the beating, but did not testify at the trial. Ms. Moore testified Ms. Higgins came over to her house and told her "Bobbie — Robert Welker had just gotten beaten up." T. at 636. Defense counsel objected. Id. The trial court overruled the objection finding the comment to be an excited utterance. T. at 636-639. An excited utterance is an exception to the hearsay rule pursuant to Evid.R. 803 (2) and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In State v. Wallace (1988), 37 Ohio St.3d 87, 89, quotingPotter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus, the Supreme Court of Ohio adopted a four-part test to determine what constitutes an excited utterance:
 (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impression and beliefs, and thus render his statement of declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d)that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.
Ms. Moore testified Ms. Higgins arrived at her home immediately after the incident (4:00 a.m.) with blood on her shirt. T. at 635-636. Ms. Higgins was crying and "real upset" when she made her statement to Ms. Moore. T. at 636. We find the statement qualifies as an excited utterance. Ms. Moore's remaining testimony merely elaborated on Ms. Higgins's condition and statement. T. at 638-639. Furthermore, we note appellant never contested the fact that Mr. Welker was beaten and bleeding.
 GANG TESTIMONY
During Captain Foster's redirect examination, the state attempted to broach the subject of appellant and gang involvement. T. at 323. Defense counsel objected and the trial court sustained the objection.Id. The state again attempted to bring up the subject of gang involvement during the cross-examination of appellant. T. at 833-835. Again, defense counsel objected. T. at 836. Following a discussion with the trial court, the state agreed to "withdraw the gang references." T. at 838.
Appellant acknowledges the trial court's ruling, but claims the trial court should have given the jury a general admonition at the time of the ruling. Upon review of the jury instructions, we find the trial court did give the jury a general admonition. T. at 913. We find this admonition to be sufficient to avoid any prejudice to appellant.
 IMPROPER REMARKS BY PROSECUTOR
Appellant argues the prosecutor made improper comments about his father being a "bad drunk," "sleeping on the bench in the courthouse throughout this trial," and about appellant receiving "blood money." T. at 826-827, 832. Defense counsel objected to the comments. The trial court sustained the objection as to the comments regarding appellant's father. T. at 827. As for the "blood money" comment, the trial court overruled the objection. T. at 832. Prior to this comment, appellant admitted he "had an idea" the money another individual involved in the incident, Derek Fulton, was handing out to others had come from Mr. Welker's wallet. T. at 831. Based upon the very minimal amount of testimony in these areas, we find no prejudice to appellant.
Appellant also argues the prosecutor relied on hearsay testimony during his closing argument. Although appellant does not reference a specific line, we assume the complained of remark is "[s]omebody said, `The dude might die.'" T. at 881. On direct examination, Timothy Pitcox, one of the individuals involved in the incident, testified to the following without objection (T. at 575):
 A. On the ride back, there was a bunch of yelling. Someone was concerned that they might have killed him or something, and everyone's like, "No, we didn't.' But one person says, "I don't know. The dude might die or something,' so —
Q. Somebody said, "The dude might die'?
 A. Yeah. I don't know who it was or anything. There was a bunch of yelling and then a bunch of people like, "No, we didn't. He won't. He's okay. He's going to be okay.' There was a bunch of yelling going west side, east side.
We fail to see how evidence not objected to by defense counsel and heard by the jury is not available for comment in closing argument.
Appellant also argues the prosecutor violated Crim.R. 16 (C)(3) by commenting on appellant's witness list during his cross-examination. Crim.R. 16 (C)(3) states "[t]he fact that a witness' name is on a list furnished under subsection (C)(1)(c), and that the witness is not called shall not be commented upon at the trial."
During appellant's cross-examination, the prosecutor questioned appellant about the identity of an individual called "Phantom" who appellant had claimed was also involved in the beating. T. at 841. The prosecutor made the following reference to appellant's witness list regarding corroboration of appellant's claim:
 Q. So of your witness list, 20 or 30 people, nobody's going to come in and say they saw Phantom except you?
T. at 843.
Technically, the prosecutor violated Crim.R. 16 (C)(3). However, we fail to find this error so prejudiced the trial. Appellant admitted to participating in the beating and the subsequent disposal of Mr. Welker's body. It was of no consequence to appellant's culpability that yet another individual had been involved in the beating.
Appellant further argues the state's cross-examination of appellant was abusive. T. a 854-855. We have reviewed the complained of questions in context and do not find them to have created undue prejudice to appellant. In fact, the state got appellant to admit he regretted what happened and he "should have handled it a different way." T. at 855. Such admissions, if anything, invoked sympathy for appellant.
Upon review, we find no prejudice to appellant in the complained of errors.
Assignment of Error II is denied.
 III
Appellant claims the trial court erred in admitting evidence of "junk science testimony" regarding a test performed by Captain Dennis Foster of the Knox County Sheriffs Department. We disagree.
In State v. Fulton (April 26, 1999), Knox App. No. 98CA14, unreported, a case involving a co-defendant herein, this court reviewed a similar challenge to this evidence and upheld its admissibility. This court found Captain Foster's test complied with Evid.R. 702 (C), Evid.R. 402 and the Supreme Court of Ohio's decision in Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607. Appellant herein makes the further argument that Captain Foster was not an "expert" pursuant to Evid.R. 702 (A) and (B). Said sections state as follows:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
Mr. Welker's dead body was discovered floating in water at a commercial gravel pit. At the time of discovery, Mr. Welker's body was wearing a pair of white socks only. Captain Foster performed a test wherein he wore a pair of socks similar to Mr. Welker's and walked into the water from the point where blood spots were discovered (six inches from the water's edge). T. at 270-272. Captain Foster performed this test to determine "if there was any effect on the socks and make a comparison to the socks on the victim" as far as the contents of the mud and so forth. T. at 269. In essence, Captain Foster performed the test to determine if Mr. Welker "indeed walked into the water [causing his own death] or did not walk into the water." Id. Captain Foster did not testify as an expert. In fact, the prosecutor asked Captain Foster questions "from a layman's point of view." T. at 273. As we held in Fulton, Captain Foster's test was merely a similar reenactment.
Based upon our review in Fulton and the above discussion, we find the trial court did not err in admitting the sock test.
Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in failing to give an instruction on the affirmative defense of abandonment. We disagree.
Crim.R. 30 (A) governs instructions and states "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." No objection was made to the failure to instruct on abandonment therefore this issue must be reviewed under the plain error doctrine cited supra.
We note "the courts of this state have held that the defendant's repudiation of criminal intent must be unequivocal before an instruction on abandonment will be warranted." State v. Brumley
(March 29, 1996), Portage App. No. 89-P-2092, unreported, at 36. The record indicates appellant denied he had criminal intent to participate in the murder in the first place. T. at 891, 898. "* * * [A]n accused is not entitled to an instruction on voluntary abandonment unless such was the defense at trial." State v. Porter
(August 14, 1995), Stark App. No. 1995CA00055, unreported at 3, citing State v. Cooper (1977), 52 Ohio St.2d 163.
Upon review, we find the trial court did not err in failing to give an instruction on abandonment.
Assignment of Error IV is denied.
 V
Appellant claims his trial counsel was ineffective for failing to request an instruction on abandonment. We disagree.
The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987),32 Ohio St.3d 380, 388.
As stated in the previous assignment of error, the thrust of appellant's defense was to deny that he ever formulated the intent to participate in the murder in the first place. The affirmative defense of abandonment implies an initial intent to participate but then renunciation of that intent. One cannot abandon an intent that was never formulated. Appellant freely admitted to actively participating in the beating of Mr. Welker, the disposal of his body and the subsequent disposal of Mr. Welker's vehicle at the gravel pit. T. at 797, 802, 808-809, 823, 856. Appellant was aware the plan was to place Mr. Welker's body in the water at the gravel pit. T. at 802, 839. Although appellant claims to have told the others that putting Mr. Welker in the water was "stupid" (T. at 802), he nonetheless continued to assist in the removal of the body from his house, transporting the body to the gravel pit and leaving the body at the gravel pit. Because of the continued participation of appellant, the defense of abandonment was never clearly established. T. at 839.
Upon review, we find no trial counsel deficiency on this issue and therefore no ineffective assistance of counsel.
Assignment of Error V is denied.
 VI
Appellant claims he was denied the effective assistance of trial counsel through numerous errors and omissions. We disagree.
The standard for ineffective assistance of counsel is cited supra.Bradley; Strickland.
Appellant argues his trial counsel was deficient in not questioning a specific juror, in not objecting to character evidence of the victim, in not objecting to hearsay evidence, in not objecting to testimony regarding gangs and in failing to request an instruction on accomplice testimony.
 JUROR QUESTIONING
Appellant argues his trial counsel should have questioned juror Richard McCarthy further regarding his familiarity with the case. Mr. McCarthy admitted he had read newspaper articles about the case, but agreed he did not have any preconceived opinions as to anything. T. at 22. Mr. McCarthy works as a printer for the local newspaper. He explained his job required him to read each article for spelling errors and problems, and he may come in contact with an article about the trial "if the story was printed on the days I work." T. at 29. The trial court attempted to rectify the situation and reserved ruling. T. at 29-30. Mr. McCarthy explained there were three press operators on a shift. T. at 29.
Mr. McCarthy is never questioned further nor is there any indication in the record as to how the trial court handled the problem of Mr. McCarthy's job duties vis á vis the general admonition not to read anything about the trial. Clearly this matter should have been resolved, and establishes a deficiency by defense counsel. However, we fail to see how the deficiency prejudiced the outcome of the trial. Mr. McCarthy only glanced through articles for spelling errors and problems, he did not read articles in detail. T. at 30. There is no evidence in the record to establish that Mr. McCarthy ever had to proof an article about the trial or if any article was written giving out information not in evidence.
 CHARACTER EVIDENCE
Appellant argues his trial counsel erred in not objecting to testimony regarding Mr. Welker's military record. T. at 190-191. Upon review, we fail to find the testimony as to Mr. Welker's military status at the time of his death to be objectionable.
 HEARSAY/GANG EVIDENCE
Appellant argues Captain Foster was improperly permitted to testify as to his opinion on the state of the evidence and possible gang involvement. We have reviewed these arguments in Assignment of Error II and have found the testimony to be proper.
 ACCOMPLICE INSTRUCTION
Appellant argues two witnesses who testified, Kevin Phillips and Mr. Pitcox, were accomplices and therefore his trial counsel should have requested an instruction on accomplice testimony. State v.Ferguson (1986), 30 Ohio App.3d 171.
We have reviewed the testimony of both Mr. Phillips and Mr. Pitcox and although neither were indicted at the time of trial, we find Mr. Phillips clearly fits the description of an accomplice. Mr. Pitcox on the other hand, although he was present during the incident, was not a volunteer but was coerced into providing and driving his pick up truck. T. at 559-565, 681. Appellant concedes in his own testimony that Mr. Pitcox was coerced. T. at 800-801.
Mr. Phillips's account of the beating was identical to appellant's version. T. at 674-677, 795-798. The testimony was also the same regarding the removal and disposal of the body. T. at 681-685, 801-805. We find Mr. Phillips was an accomplice in the incident, and the failure to request the instruction establishes a deficiency by defense counsel. However, we fail to see how the deficiency prejudiced the outcome of the trial. Mr. Phillips's testimony corroborated appellant's own version of the events and did not include testimony on what actually happened to Mr. Welker once he was dumped in the gravel pit.
Upon review, we find no prejudice to appellant.
Assignment of Error VI is denied.
 VII
Appellant claims he was denied a fair trial because the trial judge coerced the jury to reach a fast verdict. We disagree.
Prior to charging the jury and hearing closing arguments, the trial judge entered the jury room and explained to the jurors that they would have a break. T. at 861. Thereafter, the trial judge stated the following of which appellant complains:
 That means about four o'clock I'll instruct you and you can get started on your deliberations and we'll see where we are. We have different options. We can order in and you can stay and deliberate this evening. We can go home early, come back tomorrow; go home early, come back Monday. Different things we'll talk about later, but I do want to get you started deliberating yet today. Does everybody think that's good idea? Four days is enough.
T. at 862.
Appellant argues the trial judge should not have entered the jury room without appellant being present. Appellant further argues the statement constituted coercion to reach a fast verdict.
In State v. Jenkins (1984), 15 Ohio St.3d 164, paragraph thirteen of the syllabus, the Supreme Court of Ohio held the following:
 13. To prevail on a claim of prejudice due to an ex parte communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters.
Some communications between a trial judge and jurors are harmless.Id. at 237. Here, a record was made of the entire communication between the trial judge and jury. The communication did not discuss legal issues involved in the case nor did it involve a charge to the jury. The ex parte communication complained of herein was innocuous. The trial judge did not address any fact in controversy nor any law applicable to the case. There was no communication involving substantive matters. Appellant was not prejudiced by this interaction.
Assignment of Error VII is denied.
 VIII
Appellant claims the trial court's instruction on aiding and abetting was improper because it did not define "purpose." We disagree.
The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Martens (1993), Ohio App.3d 338. Jury instructions must be reviewed as a whole. State v. Coleman (1988),37 Ohio St.3d 286.
The trial court defined "purpose" during the instruction on the essential elements of murder, R.C. 2902.01. T. at 915-916. The trial court went on to define "cause" and "aiding and abetting." T. at 916. Given the fact the trial court defined all of the terms in order, we do not find the instructions were deficient or confusing.
Upon review, we find the trial court's instruction on aiding and abetting was proper.
Assignment of Error VIII is denied.
 IX
Appellant claims the trial court erred in not permitting the jury to consider the lesser included offense of felonious assault without first finding him not guilty of involuntary manslaughter. We disagree.
The trial court instructed the jury on felonious assault as a lesser included offense of involuntary manslaughter. T. at 920-921. The trial court also instructed the jury that the murder charge and the involuntary murder charge were not two separate offenses but were alternative offenses. T. at 922-923. The jury was to first consider the charge of murder and, if a guilty verdict was not reached, then consider the charge of involuntary manslaughter. T. at 925-926. The jury convicted appellant of murder. Pursuant to the trial court's instructions, the jury never had a reason to consider the charge of involuntary manslaughter and the lesser included offense of felonious assault.
Upon review, we do not find any error in the instructions as given by the trial court.
Assignment of Error IX is denied.
 X
Appellant claims he was denied due process when the indictment was amended. We disagree.
The indictment included one count of murder in violation of R.C.2903.02 and one count of involuntary manslaughter in violation of R.C. 2903.04. The trial court instructed the jury on aiding and abetting in violation of R.C. 2923.03. Said statute at subsection (F) specifically states "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
In the bill of particulars filed February 12, 1998, the state included the following complicity language:
 On or about the 3rd day of August, 1997, in the County of Knox, State of Ohio, SAMUEL J. MUSGRAVE did commit MURDER by purposely causing the death of Robert Welker contrary to and in violation of Section 2903.02 (A) of the Revised Code of Ohio, and contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio. More specifically, on or about the 3rd day of August, 1997, SAMUEL J. MUSGRAVE purposely caused and/or purposely aided and abetted another in causing the death of Robert Welker by means of intentionally holding, choking and striking Robert Welker and/or of intentionally disposing of Robert Welker's body in a manner which would cause his death by drowning in the event that he was not already dead.
Appellant was put on notice that he was charged not only as a principle offender but also as an aider and abettor some twelve days before the commencement of the trial. We find the indictment was not amended. Appellant was not denied due process.
Assignment of Error X is denied.
 XI
Appellant claims the trial court erred in not instructing the jury that they must unanimously agree upon whether appellant was the principle offender or an aider and abettor. We disagree.
We note there was no objection to the jury charge nor any request for a specific finding on principle offender versus aider and abettor. See, Crim.R. 30 (A), supra. Apart from the failure to object to the charge or request a specific finding, R.C. 2923.03 (F), as discussed in the previous assignment of error, makes no distinction in culpability between the principle offender and the aider and abettor.
Assignment of Error XI is denied.
 XII, XIII
Appellant claims the trial court erred in denying his motion for acquittal, and the verdict was against the manifest weight of the evidence. We disagree.
Crim.R. 29 governs motions for judgment of acquittal and states as follows:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
The standard in determining a Crim.R. 29 motion is set out in Statev. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
 Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin
(1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant's challenges can be divided into three theories: 1) the cause of death was not established by the evidence, 2) the element of purposeful intent was not established by the evidence, and 3) he had abandoned the intent to injure Mr. Welker.
 CAUSE OF DEATH
Appellant argues the evidence did not establish the cause of death.[1] The testimony from several witnesses clearly established Mr. Welker was a life in being on August 3, 1999, he attended a party at appellant's house, was beaten, transported to a gravel pit and abandoned at the gravel pit, and was discovered the next day floating in water, dead. T. at 158, 556-557, 564-567, 568-570, 671, 674-677, 681-686, 738-742, 796-798, 799, 801-805. Keith Norton, M.D., the Franklin County Coroner who performed the autopsy on Mr. Welker, testified Mr. Welker sustained head injuries that "were certainly consistent with the person having been rendered unconscious" but "not enough that it would cause anyone to die." T. at 388-389. Based upon his examination and the fact that Mr. Welker's body was discovered floating in water, Dr. Norton rendered the following opinion as to cause of death:
 * * * it appears that he drowned. There was no other cause of death — you know, natural cause of death like heart attack or anything like that that I saw, and yet there was this injury to the face, which could not have been enough — or to the head that would not have been enough to cause death by itself, and yet with that injury to the head, he might have been unable to protect himself if he had gotten himself in the water, so drowning seemed the most — is the most likely cause of death and is the cause of death in this case.
T.at 390.
We find this opinion, coupled with the facts of the case presented in evidence, is sufficient circumstantial evidence to establish the cause of death. We note circumstantial evidence is on par with direct evidence. Jenks.
 INTENT
Appellant argues the evidence did not establish that he had formed the requisite intent (purposely) to cause Mr. Welker's death. R.C.2901.22 (A) defines "purposely" as follows:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Appellant argues the facts failed to establish he purposely caused Mr. Welker's death. While it is undisputed appellant participated in the brutal beating of Mr. Welker and the dumping of his body at the gravel pit, appellant argues there was no evidence that he placed Mr. Welker in the water causing his death by drowning. Our inquiry is whether the facts proven by direct and circumstantial evidence constitute sufficient credible evidence of "purposely cause the death of another."
Testimony established appellant and others severely beat Mr. Welker rendering him unconscious. T. at 556-557, 674-677, 738-742. After Mr. Welker fell to the floor, appellant kicked him. T. at 677. Mr. Phillips testified Mr. Fulton suggested taking Mr. Welker's body to the gravel pit "[t]o get rid of him, put him in the water." T. at 678. Appellant was present when this comment was made. T. at 677-678. Appellant assisted in placing Mr. Welker's unconscious body in the bed of the pickup truck, drove with the body to the gravel pit, and assisted in dumping the body near the water. T. at 564-567, 568-570, 681-686. Blood was found in the immediate vicinity of the water. T. at 158. Mr. Welker was breathing when his body was removed from the pickup truck. T. at 566.
Upon review, we find this patchwork of facts established that appellant actively participated in the beating rendering Mr. Welker unconscious, was aware of the plan to dispose of the body in the water at the gravel pit, and actively participated in the disposal of the body. These facts are sufficient to establish "purpose."
 ABANDONMENT
Appellant argues the evidence established that he had abandoned the crime of murder. Appellant cites to his own statement that he told Mr. Fulton it would be "stupid" to take Mr. Welker's body to the gravel pit and dispose of it in the water. T. at 802. However, appellant's subsequent actions negate any claim of abandonment. Appellant helped carry Mr. Welker's body to the pickup truck, helped remove the body from the pickup truck, dropping the body causing Mr. Welker's head to strike the ground, and helped carry the body to the gravel pit in the immediate vicinity of the water. T. at 564-567, 568-570, 681-686, 803-805. Appellant then shared in the money taken from appellant, and played an active role in disposing of Mr. Welker's vehicle and other evidence. T. at 583, 808-810, 830-831.
Upon review, we find sufficient evidence presented to the jury, if believed, to support appellant's conviction and no manifest miscarriage of justice.
Assignments of Error XII and XIII are denied.
The judgment of the Court of Common Pleas of Knox County, Ohio is hereby affirmed.
 __________________ Farmer, J.
Hoffman, P.J. and Wise, J. concur.
[1] We note appellant's own trial counsel argued the "medical examiner testified conclusively that Mr. Welker died of drowning and that any beating he sustained definitively would not have resulted in his death." See, Appellant's Motion for Acquittal filed March 13, 1998.